**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN ERNIST TYSON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18-cv-01733 |
| | ) | |
| v. | ) | Judge John J. Tharp, Jr. |
| | ) | |
| COOK COUNTY JAIL, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

The defendants' motion for summary judgment [272] is granted in part and denied in part, as explained below. Summary judgment is granted in favor of defendants Elizabeth Echols, Nicole Campbell, Henry Nwankwo, Emmanuel Onwumah, Sunita Williamson, Stephen Maglaya, Steve Gluszek, and Scott Guzik. The plaintiff, John Tyson, may proceed with his excessive force and negligence claims against Cook County, the Cook County Sheriff's Office, Cook County Sheriff Thomas Dart (in his official capacity), and Mark Clark. Counsel will be appointed to represent Tyson on his remaining claims. A telephonic status hearing is set for March 17, 2026 at 9:15 a.m.

**<u>BACKGROUND</u>**

Tyson alleges he experienced a series of abuses at the Cook County Jail during two pretrial detentions in December 2017 and May 2018. During his first stay in the jail, he alleges he was improperly denied medical care, causing a stroke. During the second, he claims an officer hit and kicked him while his ankle was handcuffed to a bench. Both of these events, Tyson argues, amount to constitutional violations.

## I.     Medical Care

Tyson was diagnosed with heart failure, nonischemic cardiomyopathy, and hypertension in 2015.[1] Defs.' Resp. Pl.'s 56.1 Statement 1–2 ¶ 2, ECF No. 301.[2] To treat these conditions, his doctor prescribed daily doses of enalapril, carvedilol, and furosemide. That doctor advised Tyson that he always needed to take his blood pressure before taking his medications, because if his blood pressure was too low, his medication would drop his blood pressure further and could result in death. *Id.* at 3 ¶ 5. Tyson fastidiously measured his blood pressure before taking his medications every day. *Id.* at 3 ¶ 6.

Tyson was arrested and admitted to the Cook County Department of Corrections on December 4, 2017. *Id.* at 1 ¶ 1. Upon admission, he told the hospital staff about his medical conditions. *Id.* Tyson also told them the importance of taking his blood pressure before taking his medications each day, saying that he could die if that instruction was not followed. *Id.* at 4 ¶ 11. That same day, a non-defendant physician's assistant entered an order on Tyson's chart to have his blood pressure taken on Mondays and Thursdays. *Id.* at 5 ¶ 13.

At the Cook County Jail, Tyson was housed in RTU Division 8. *See id.* at 6 ¶ 17. Nurses distributed medication twice a day to this division. *Id.* Each of the nurses (except one non-defendant nurse) assigned to distribute his medications refused to take Tyson's blood pressure. *Id.* at 7 ¶ 20. Defendant Nurse Elizabeth Echols was one of the nurses assigned to give Tyson his

---

[1] The Court, on a summary judgment motion, resolves all factual disputes in favor of the nonmoving party. *See Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022). As such, the following facts are presented in the light most favorable to Tyson, crediting his testimony.

[2] The defendants ask this Court to disregard certain statements in Tyson's Rule 56.1 statement and deem parts of their own 56.1 statement admitted on the grounds that he did not properly comply with the Local Rule's requirement to cite to specific evidence in the record. Reply 1–3, ECF No. 302. The Court declines to exercise its discretion to do so. *See Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1017 (7th Cir. 2016) ("How strictly to apply a local rule . . . is left to the district court's sound discretion.").

medication. Pl.'s Resp. Defs.' 56.1 Statement 5 ¶ 23, ECF No. 289. She was assigned to do so only on December 5, 2017, a Tuesday. *Id.* Tyson submitted Health Services Request Forms on December 6 and 9, in which he explained the necessity of blood pressure checks. *Id.* at 9 ¶ 23. Because the nurses did not take his blood pressure, Tyson refused to take his carvedilol on December 5, and again between December 8 and 12. *Id.* at 8 ¶ 22.

In the early morning hours of December 14, Tyson complained that he was dizzy and was taken to the dispensary, where defendant Nurse Henry Nwankwo evaluated him. Pl.'s Resp. Defs.' 56.1 Statement 8 ¶ 39. Tyson told Nwankwo that he was dizzy and had pain in his left eye and neck. *Id.* at 8 ¶ 41. Though Nwankwo's evaluation of Tyson did not reveal any abnormalities, Nwankwo nonetheless called the urgent care doctor about Tyson's symptoms. *Id.* at 9 ¶¶ 42–45. Nwankwo subsequently took Tyson to the urgent care. *Id.* at 9–10 ¶ 46. The December 14 interaction was the only time Nwankwo saw Tyson. *Id.* at 8 ¶ 40. Nwankwo was never assigned to distribute Tyson's medications. *Id.* at 8 ¶ 38.

At the urgent care, Tyson's blood pressure was taken, and he saw defendant Doctor Sunita Williamson. Tyson Dep. 98:11-24–99:1-21; Defs.' Resp. Pl.'s 56.1 Statement 18–19 ¶ 52. He told Williamson about his symptoms, including his inability to feel his legs, and she monitored him until he was able to walk again. Tyson Dep. 97:12-16; *id.* at 99:2-19. After that, Williamson sent him back to RTU 08. *Id.* at 103:3-18. Sometime before leaving the urgent care, Tyson wrote "I'm OK" on a Refusal to Consent to Evaluation or Treatment form and signed it. Pl.'s Resp. Defs.' 56.1 Statement 10 ¶¶ 48, 50. Because he signed the treatment refusal form, Tyson was instead seen by non-defendant Doctor Gregory Papiez later that day. *Id.* at 10 ¶ 50. Though Papiez's evaluation of Tyson did not reveal any abnormalities, much like Nurse Nwankwo's, Papiez recommended Tyson be seen at Stroger Hospital due to the symptoms Tyson reported. *Id.* at 11 ¶ 56.

When he was admitted to the hospital, Tyson reported he was suffering from stabbing pain in his left eye, slurred speech, nausea, vomiting, and tremors. Defs.' Resp. Pl.'s 56.1 Statement 19 ¶ 55. Based on his described symptoms and a CT scan taken at the hospital, Tyson's expert witness, Doctor Dan Fintel, determined that Tyson likely suffered a cardioembolic stroke due to missing his medication doses in the days prior. Fintel Report 3, ECF No. 294-5.

Tyson filed two prison grievances regarding his medical care. In the first, under "Name and/or Identifier(s) of Accused," Tyson wrote "Cermarck RTU Div. 8#." Defs.' Ex. DD 1, ECF No. 273-30. His description of the incident states: "I have been mistreated over my medication. Please could anyone help in this situation. I'm very sick beside that its hard to hold down my food at times. I wish to see the Cook for violating my rights to medication over the past week." *Id.* His first grievance is dated December 10, 2017, and lists the date of incident as December 4. *Id.* Tyson filed a second grievance on December 19, where he listed "medical staff" as the accused. Defs.' Ex. EE 1, ECF No. 273-31. In this grievance, he alleges:

> While in the custody of Cook County Jail the medical staff refused to give me proper medical care. Every since I was in Div 8/3C the medical staff would not take my blood pressure before giving me my meds. So I had no chose but to refuse them because if my blood pressure is low and I take my meds theirs is a chance that it could kill me and that 3 doctors told me that I most take it that way. They told me that if by any reason I cant take my blood pressure don't take meds. After 5 days or more of not being able to take my meds they finally gave them to me on 12/14/17. Thats the day I had my stroke.

*Id.* Tyson wrote that the date of incident was December 14. *Id.*

Tyson was eventually discharged from the Cook County Department of Corrections on February 14, 2018. Pl.'s Resp. Defs.' 56.1 Statement 12 ¶ 58.

## II.    Use of Force

Tyson was arrested again on May 25, 2018, and admitted to the Cook County Department of Corrections. *Id.* at 12 ¶¶ 59–60. Upon intake, Tyson was taken to a holding cell in the Cook

4

County Jail. Defs.' Resp. Pl.'s 56.1 Statement 24 ¶¶ 68, 70. In the cell, Tyson's hands were cuffed in front of him and his left ankle was handcuffed to a bench. *Id.* at 24–25 ¶ 73. A non-defendant officer informed Tyson that he would be moved to the RTU, where he had been housed during his prior experience at the jail. *Id.* at 25 ¶ 74. That scared Tyson, because the RTU was where the nurses had previously refused to take his blood pressure. *Id.* Tyson told the officer he would not return because the nurses "tried to kill [him]" when he was there before. *Id.* Four or five officers came to the cell to transport Tyson to the RTU, including defendants Officers Mark Clark and Scott Guzik. *Id.* at 25 ¶¶ 75, 77. A sergeant apparently matching defendant Sergeant Stephen Maglaya's description was also present. *Id.* at 26 ¶ 79–80.[3]

When the officers arrived, Tyson tried to explain why he feared returning to the RTU. *Id.* at 26–27 ¶ 81. Tyson was holding onto the bench in an attempt to prevent the officers from taking him to the RTU. Tyson Dep. 153:5-14. Both Clark and Guzik tried to take his hands off the bench, then Guzik started pulling Tyson's shoulder and Clark began punching him. Defs.' Resp. Pl.'s 56.1 Statement 27–28 ¶ 82. Maglaya pulled out a handheld video camera and began recording the altercation. *Id.* at 28 ¶ 83. Clark continued to punch Tyson until he was in severe pain and let go of the bench. *Id.* at 29 ¶¶ 85, 86. Guzik then handcuffed Tyson behind his back. *Id.* at 29 ¶ 86. At that point, Clark started kicking Tyson's leg, which was still handcuffed to the bench. *Id.* Eventually, the officers uncuffed Tyson's leg and walked him to the RTU. *Id.* at 30 ¶ 88. During that walk, Clark forced Tyson to keep his arms high behind his back. *Id.* When they reached a holding cell in the RTU, Clark slammed Tyson into the cell's gate. *Id.* at 30 ¶ 89.

---

[3] Though the parties' statements of facts are unclear on this point, the Court will assume for purposes of this motion that the sergeant was in fact Maglaya.

Tyson submitted a grievance to the jail about his experience being moved to the RTU. In his grievance, he wrote:

> On May 26, 2018 I informed the doctor in Div 8 Cermak that if they put me back on 3C Div 8 RTU that I would not get the proper medical care. I was taken by force by Officer Clark + Gusey while the sergent vedio taped it. I did not receive my meds on the 26 I received my blood pressure and meds on 27 They took my blood pressure once on the 28 blood pressure was low so I could not take my meds and they never came back to recheck it so I can safely take my meds. On 12-14-17 I had a stroke on this unit because of semuler situation my life is in danger

Pl.'s Resp. Defs.' 56.1 Statement 16 ¶ 80.

Tyson was discharged from the Cook County Department of Corrections on May 29, 2018. *Id.* at 1 ¶ 1.

### III. The Instant Litigation

Tyson brought suit against Cook County, the Cook County Sheriff's Office, the Cook County Sheriff Thomas Dart, Nurse Elizabeth Echols, Nurse Nicole Campbell, Nurse Henry Nwankwo, Nurse Emmanuel Onwumah, Doctor Sunita Williamson, Sergeant Stephen Maglaya, Officer Mark Clark, Officer Steve Gluszek, and Officer Scott Guzik for constitutional violations and state law torts stemming from his time in the Cook County jail. Tyson seeks relief against the defendants for Fourteenth Amendment violations in the form of failure to provide medical care and excessive force, state law negligence, and spoliation.

Judge Bucklo, who was previously assigned to this case, dismissed Tyson's individual capacity claims against Sheriff Dart as well as his claim for excessive force against Cook County, the Cook County Sheriff's Office, and Dart. Mem. Op. Order, ECF No. 169. The defendants moved for summary judgment on all of Tyson's remaining claims.

**DISCUSSION**

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, which directs courts to grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of "identify[ing] 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Logan v. Com. Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996) (citation modified) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant has done so, a nonmovant who bears the burden of proof at trial, as Tyson does here, must "designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). A genuine issue exists when "a reasonable jury could return a verdict for the non-moving party." *Johnson v. Edward Orton, Jr. Ceramic Found.*, 71 F.4th 601, 609 (7th Cir. 2023) (quoting *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022)). Thus, on reviewing a motion for summary judgment, the court views all evidence in the light most favorable to the nonmovant. *Weaver*, 28 F.4th at 820.

As an initial matter, Tyson agreed to dismiss defendants Campbell, Onwumah, and Gluszek. Resp. Mem. 1 nn.1–2. The Court therefore grants summary judgment in favor of those defendants. Tyson asserts medical need, excessive force, state law negligence, and spoliation theories of relief against the remaining defendants, each of which the Court addresses in turn.

I. **Medical Need**

Tyson's first claim concerns his 2017 stint in Cook County Jail and the medical staff's alleged refusal to take his blood pressure before administering his medications. As a pretrial detainee, Tyson's claims are governed by the Fourteenth Amendment. He brought suit against

7

individual members of the Cook County Jail medical staff (Echols, Nwankwo, and Williamson), Cook County, the Cook County Sheriff's Office, and the Cook County Sheriff Thomas Dart. The claims against Cook County, the Sheriff's Office, and Dart are brought pursuant to the Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which allows a plaintiff to hold a county liable for constitutional violations. As such, all of Tyson's claims require him to show that his Fourteenth Amendment rights were violated.

The Fourteenth Amendment prevents prison officials from punishing pretrial detainees, since they have not been convicted of any crime. *Pittman ex rel. Hamilton v. Madison Cnty.*, 108 F.4th 561, 566 (7th Cir. 2024). A pretrial detainee asserting a medical care claim must demonstrate three things: "(1) an objectively serious medical need; (2) volitional acts or omissions on the part of the defendant concerning the medical need; and (3) a response from the defendant that was 'objectively unreasonable.'" *Walker v. Roe*, 22-cv-03004, 2025 WL 896909, at *4 (N.D. Ill. Mar. 24, 2025) (quoting *Miranda v. Cnty. of Lake*, 900 F.3d 335, 351 (7th Cir. 2018)).

Tyson produced evidence to support the first two elements of his medical care claim. First, he produced evidence that he suffered from congestive heart failure, an objectively serious medical condition. *See Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) ("There is no dispute that Taylor had a serious heart condition, CHF [congestive heart failure], which was diagnosed by a doctor."). Second, the volitional acts element simply asks "whether the defendant intended to commit the physical act that caused the alleged injury"—*i.e.*, whether the defendants acted intentionally or by accident. *Pittman*, 108 F.4th at 570. Tyson's testimony about the nurses refusing to take his blood pressure is evidence of a volitional act. The remaining hurdle for him to clear, then, is producing evidence that the defendants' response was objectively unreasonable. To

8

start, though, the Court considers whether Tyson properly exhausted his administrative remedies, a prerequisite to suit.

### A. Exhaustion

The Prison Litigation Reform Act ("PLRA") requires detainees to exhaust their administrative remedies before filing a § 1983 suit in federal court. 42 U.S.C. § 1997(e). A detainee must comply with the prison's grievance procedures to properly exhaust, *Jones v. Bock*, 549 U.S. 199, 218 (2007), and a detainee's grievance must give the jail sufficient notice of the nature of his grievance and the identity of the accused, *see King v. Dart*, 63 F.4th 602, 608–09 (7th Cir. 2023). That is because exhaustion should "give the Jail 'a fair opportunity to address [the prisoner's] complaint.'" *Id.* at 608 (quoting *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011)). Exhaustion is an affirmative defense, so the defendant bears the burden of proof. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

The defendants argue that Tyson did not properly exhaust his administrative remedies because his grievances do not name or describe Echols, Nwankwo, or Williamson. Mot. Summ. J. Mem. 23, ECF No. 274. However, a detainee need not list the accused by name in order to exhaust. *Jones*, 549 U.S. at 217–18. Tyson's grievance specifically stated that "[e]very [day] since I was in Div 8/3C the medical staff would not take my blood pressure before giving me my meds," which put the jail on notice that Tyson was accusing all of the medical staff assigned to distribute his meds since he arrived at that division. *See, e.g.*, *Willis v. Dart*, No. 21-cv-01295, 2024 WL 2882209, at *5 (N.D. Ill. 2024) (holding that a grievance which "referenc[ed] the 'guard' who let a transferred inmate with mental health issue onto his tier [] provided sufficient information to enable the CCDOC officials to determine that [the defendant] was the 'guard' in question"). Of the medical defendants, however, only Echols was assigned to distribute Tyson's medications. Tyson's

9

grievances therefore do not provide any notice to the jail that he took issue with Nwankwo or Williamson's actions.

Tyson argues that because the jail addressed his grievances on the merits, the defendants cannot now utilize the exhaustion defense. To support this argument, he relies on the Seventh Circuit's decision in *Maddox v. Love*. 655 F.3d 709 (7th Cir. 2011). There, the Seventh Circuit held that "[w]here prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense." *Id.* at 722. The court, however, cabined the reach of that holding in *King v. Dart*, explaining that in *Maddox*, "the prison was aware of the content of the prisoner's complaint," but decided to forgive a procedural error by deciding it on the merits. 63 F.4th 602, 609 (7th Cir. 2023). But in *King*, the plaintiff's grievance was not procedurally deficient—instead, it failed to make the jail aware of the plaintiff's claim. *Id.* So too here. In his grievance, Tyson only discussed his issue with medical staff assigned to distribute his medications, meaning the jail was unaware of his claims against Nwankwo or Williamson. The only defendant for which Tyson properly exhausted is Echols.

### B. Objective Reasonableness

Tyson must introduce evidence sufficient for a reasonable jury to determine Echols acted objectively unreasonably. The objective reasonableness element of a Fourteenth Amendment medical need claim requires Tyson to "prove that [Echols] did not take reasonable available measures to abate the risk of serious harm to [Tyson], even though reasonable officers under the circumstances would have understood the high degree of risk involved, making the consequences of [Echols's] conduct obvious." *Id.* at 572 (emphasis removed). This is a wholly objective inquiry. *Id.*

Tyson's claim is premised on the allegation that he told his nurses he needed his blood pressure taken before receiving his enalapril, carvedilol, and furosemide each day. However, he produced no evidence to support the idea that this "requirement" was based in medical fact. Tyson only points to his own testimony about what his doctor allegedly told him. Medical professionals testified at their depositions that it is not standard practice to take a patient's blood pressure before distributing these medications on a daily basis. Richardson Dep. 17:17-24–18:1-13, ECF No. 273-12 32; Papiez Dep. 26:17-24–27:1-10, ECF No. 273-13. Indeed, Tyson's own expert said that "as a routine, unless someone is feeling unwell, you don't have them take their blood pressure before taking each pill." Fintel Dep. 187:24–188:1-2, ECF No. 294-6. Nurses operating in a jail cannot be expected to base treatment decisions on the patient's unsubstantiated say-so about the treatment needed, and Tyson provides no basis to conclude that checking blood pressure was an accepted prerequisite to taking the medications that had been prescribed for him. Not only did the doctors who testified confirm that it was not standard practice to take the patient's blood pressure before providing the prescribed medication, but Tyson did not identify any information in his medical records indicating that any physician had entered treatment notes or other instructions indicating the need to check Tyson's blood pressure before dispensing his medications. In the absence of evidence that the accepted standard of care required checking blood pressure before taking the medications, Tyson failed to show that a reasonable nurse in Echols's position would know that there was a high degree of risk associated with failing to take Tyson's blood pressure. Tyson cannot overcome summary judgment on this claim.

Because Tyson has not adduced evidence sufficient for a reasonable jury to find that his constitutional rights were violated with respect to his medical needs, neither his individual officer claims nor his *Monell* claims can go forward on this claim.

11

## II. Excessive Force

Tyson's second claim involves his 2018 return to the Cook County Jail and the officers' alleged use of force to move him to the RTU. Tyson's excessive force claim—brought against individual officers (Clark, Guzik, and Maglaya), Cook County, the Cook County Sheriff's Office, and the Cook County Sheriff Thomas Dart—is also governed by the Fourteenth Amendment. Again, Tyson must show that his constitutional rights were violated in order to prevail against any defendant.

To prove a constitutional violation arising from the use of force, Tyson must show that "the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). The trier of fact "must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time." *Id.* Considerations include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* In evaluating Tyson's excessive force claim, the Court begins once more with whether Tyson properly exhausted his administrative remedies.

### A. Exhaustion

The defendants maintain that Tyson did not properly exhaust his excessive force claim because his grievance "[does] not identify Defendants . . . Lt. Guzik, [or] Sgt. Maglaya . . . by name, nor does it provide any descriptors which would put the CCDOC on notice of their alleged

12

involvement in the described incident." Mot. Summ. J. Mem. 20.[4] The defendants further argue that because Tyson did not state that the force used against him was "excessive," he did not adequately inform the jail of the nature of his claims. *Id.* at 21.

The Court agrees that Tyson's grievances do not name or describe Maglaya. Though Tyson stated that a sergeant was videotaping, there is nothing in his grievance that the jail could use to determine that the sergeant Tyson referenced was Maglaya. And as discussed above, that the jail addressed Tyson's grievance on the merits cannot save his claim. Because the grievance did not put the jail on notice that Tyson was accusing Maglaya, Tyson's claim against him is barred for failure to exhaust.

As for Guzik, the parties agreed that Tyson's grievance says he "was taken by force by Officer Clark + Gusey." But looking at the grievance itself (which is handwritten), the name could alternatively be read as Gusek. Either way, the name is similar enough that the jail was on sufficient notice that Tyson was accusing Guzik of using force against him. *See, e.g.*, *Ward v. Brown*, 2022 WL 1404824, at *4 (N.D. Ill. May 3, 2022) (holding that the plaintiff exhausted his claims against Dr. Yu by naming "Dr. U/or Dr. You" in his grievance).

Further, Tyson's failure to specifically use the words "excessive force" in his grievance does not doom his claim. The Seventh Circuit has held that "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought . . . the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002).

---

[4] In their Reply, the defendants also say "[i]t is undisputed that Plaintiff named 'Officer Colemon,' 'Guszak,' and 'Clack' and not Defendants Clark, Maglaya or Guzik in his grievances," citing to Tyson's response to the defendants' statement of facts. What that document actually shows, though, is that both parties agree that Tyson wrote "Clark" in his grievance. Pl.'s Resp. to Defs.' 56.1 Statement 16 ¶ 80. Tyson, then, exhausted his claim against Clark.

Tyson's allegation that he was "taken by force" by Guzik did just that, so he exhausted his claim with respect to Guzik.

### B. Objectively Unreasonable Force

After accounting for exhaustion, Tyson's only remaining personal capacity claims for excessive force are against Guzik and Clark. To overcome summary judgment, there must be sufficient evidence in the record for a reasonable jury to determine that the defendants used objectively unreasonable force.

Starting with Clark, Tyson testified at his deposition that Clark "beat [his] left shoulder . . . with his fist" over thirty times, causing Tyson intense pain. Tyson Dep. 154:10-19, 164:20. Both of his hands, Tyson alleged, were handcuffed in front of him. *Id.* at 151:22-24. Tyson said that Clark proceeded to kick his left leg, which was handcuffed to a bench. *Id.* at 155:22-24–156:1-4. Tyson's testimony, if believed, indicates he did not pose much of a threat to Clark while handcuffed and tethered to a bench. Tyson does admit that he was holding onto the bench in an attempt to prevent the officers from moving him to the RTU, but insists he was not using any force against the officers. *Id.* at 153:5-14. Those actions exhibit passive resistance, which, a jury could reasonably conclude, does not justify beating the resistor into submission. *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 732 (7th Cir. 2013) ("Prior to 2007, it was well-established in this circuit that police officers could not use significant force on nonresisting or passively resisting suspects."). Hitting and kicking, moreover, is incongruous with the goal of getting Tyson to move, in contrast to pulling him. In light of these factors, a jury that credits Tyson's testimony could find that Clark's use of force was objectively unreasonable.

The defendants argue that Clark's time sheet shows he had clocked out before the alleged incident occurred, necessitating summary judgment in his favor. Mot. Summ. J. Mem. 18. But

14

Tyson's testimony that Clark was the one to use excessive force against him precludes that outcome, creating a textbook factual dispute that is inapposite for summary judgment resolution. As such, Clark is not entitled to summary judgment.

With respect to Guzik's behavior, Tyson's testimony differs significantly. Tyson said that an officer (apparently Guzik) pulled at his right shoulder. Tyson Dep. 151:2-13 ("[T]he officer that was on my right . . . I believe it was Guzman or something like that, Gusip. . . . he was pulling my right shoulder and my right arm."). He further testified that this officer "wasn't cruel to me. . . . [h]e wasn't beating me. . . . [e]ven though it was forceful, it was still with care, realizing that I'm a human being, not a punching bag. You know, realizing that this man has a medical issue, a medical problem." *Id.* at 176:12-20. Tyson did not say that Guzik pulling on his arm was painful or that it hurt him. Indeed, he said that "one officer, Officer Clark was the one doing all the physical assault. He's the one who physically assaulted me." *Id.* at 163:20-22. Tyson was holding onto the bench, and the officers needed to move him. Those circumstances reasonably necessitated some use of force, such as pulling on Tyson's arm. *See Scaife v. Faivre*, No. 17-cv-08946, 2019 WL 5695826, at *3 (N.D. Ill. Nov. 4, 2019) ("[The defendant's actions in attempting to pry Scaife's fingers or hands from the cell bars were reasonably related to the legitimate attempt to remove him from the cell … no reasonable jury could find that [his] use of force was objectively unreasonable.").

In light of the record, no reasonable jury could find that Guzik's alleged actions constituted objectively unreasonable force.

### III. Negligence

In addition to his constitutional claims, Tyson brought state-law negligence claims against all of the defendants. The defendants argue that the Illinois Tort Immunity Act ("ITIA") grants

them immunity against these claims. Because the ITIA treats medical care claims and excessive force claims differently, this Court evaluates the claims separately.

### A. Medical Care Defendants

Illinois law shields public employees from injury "proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody," unless the employee knows that the prisoner needs immediate care and acts willfully and wantonly in failing to secure care. 745 ILCS 10/4–105 (West 2025). The Seventh Circuit has said that the standard for willful and wanton conduct is "remarkably similar" to that for deliberate indifference claims. *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007). Deliberate indifference is the standard that applies to a medical care claim brought by a convicted prisoner, meaning that it is analyzed under the Eighth Amendment. *Id.* at 401. Since *Williams*, the Seventh Circuit has recognized that the Fourteenth Amendment standard is less burdensome than the deliberate indifference standard. *Miranda v. Cnty. of Lake*, 900 F.3d 335, 352–54 (7th Cir. 2018). Because Tyson has not produced sufficient evidence to move forward with his medical care claim under even the Fourteenth Amendment's lower standard, he certainly has not produced enough evidence to support a claim that the defendants acted willfully and wantonly. As such, state-law immunity applies, and Tyson's medical care negligence claims fail.

### B. Excessive Force Defendants

The defendants provide no explanation for why they believe the ITIA applies to the excessive force defendants. The Court notes, however, that the ITIA provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2–202 (West 2025). The ITIA further defines willful and wanton conduct as "a course of action which

shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property," 745 ILCS 10/1–210 (West 2025).

Looking at all the evidence in the light most favorable to the plaintiff, no reasonable jury could find that Guzik acted willfully and wantonly, for the same reasons no reasonable jury could find that he used objectively unreasonable force. Tyson agrees that Clark was the one causing him harm, not Guzik. As for Clark, though, Tyson's allegations could give rise to the inference that Clark intentionally tried to harm him, which constitutes willful and wanton conduct. This Court cannot say, at this stage, that Clark is entitled to immunity.

A question remains as to whether Tyson can hold Cook County, the Sheriff's Department, and Dart (in his official capacity) vicariously liable for Clark's actions. Illinois tort law generally recognizes respondeat superior liability, meaning that an employer can be liable for the torts of its employees committed within the scope of their employment. *Bagent v. Blessing Care Corp.*, 862 N.E.2d 985, 991 (Ill. 2007). The ITIA shields public employees from liability for the conduct of others, 745 ILCS 10/2–204 (West 2025), but not public institutions. *Thomas ex rel. Smith v. Cook Cnty. Sheriff*, 401 F. Supp. 2d 867, 875 (N.D. Ill. 2005) ("Because Section 2–204 of the Immunity Act only applies to public *employees*, and not public institutions, the institutional defendants are not included within the plain language of the Tort Immunity Act . . . ."). Because immunity was the only ground on which the defendants moved for summary judgment on Tyson's negligence claim, and immunity does not apply to the institutional defendants, they are not entitled to summary judgment on Tyson's negligence claim.

## IV.    Spoliation

Tyson's final claim is one for spoliation. He alleges that the defendants filmed Clark beating him, but either failed to preserve or destroyed the recording. Fourth Am. Compl. 19 ¶¶ 89–91. In Illinois, spoliation is cognizable under negligence law. *Boyd v. Travelers Ins. Co.*, 652 N.E.2d 267, 270 (Ill. 1995). As such, a plaintiff seeking recovery for spoliation must establish the elements of a negligence claim: duty, breach, causation, and damages. *Id.* at 270. Defendants argue they are entitled to summary judgment because, *inter alia*, they had no duty to preserve any video. Mot. Summ. J. 27.

In a negligence case, whether a duty exists is a question of law for the court. *Chandler v. Ill. Cent. R.R. Co.*, 798 N.E.2d 724, 728 (Ill. 2003). "The general rule in Illinois is that there is no duty to preserve evidence." *Martin v. Keeley & Sons, Inc.*, 979 N.E.2d 22, 28 (Ill. 2012). A duty to preserve evidence can arise, however, "through an agreement, a contract, a statute, or a special circumstance." *Boyd*, 652 N.E.2d at 270–71 (citation removed). When one of those circumstances is present, then the duty exists only "if a reasonable person in the defendant's position should have foreseen that the evidence was material to a potential civil action." *Id.* at 271.

Tyson argues that an Illinois statute establishes the necessary prerequisite for duty. The statute provides that "any and all recordings made with an officer-worn body camera must be destroyed [after 90 days], unless any encounter captured on the recording has been flagged. An encounter is deemed to be flagged when: (i) a formal or informal complaint has been filed." 50 ILCS 706/10–20(a)(7) (West 2025). Tyson, however, testified that the officer used a handheld camera, not a body camera, so this statute does not apply.

There is also no special circumstance that could give rise to a duty. Though "Illinois courts have not provided a precise definition for what 'special circumstances' must be present to support

18

a claim that a defendant had a duty to preserve evidence," *Shelvy v. Wal-Mart Stores, Inc.*, No. 11-cv-09176, 2013 WL 251427, at *3 (N.D. Ill. Jan. 23, 2013), prior cases provide some instruction. Possession and control over the evidence alone are not sufficient to establish a special circumstance. *Martin*, 979 N.E.2d at 31. Knowledge of the incident is also not enough. *Shelvy*, 2013 WL 251427, at *3. The plaintiff must point to something more, like a specific request to preserve the evidence or an agreement by the defendant to preserve it. *Id.* Without any additional factor suggesting a special circumstance, Tyson has failed to demonstrate that the defendants had a duty to preserve the video.

*   *   *

While this Court does not doubt the severity of Tyson's medical issues, he is unable to overcome summary judgment on his medical care claims. Of the defendants in this case, he only exhausted his administrative remedies as to Nurse Echols, and no reasonable jury could find that Echols acted objectively unreasonably. As for Tyson's excessive force claims, the only one that can move forward is his claim against Officer Clark, because there is evidence upon which a jury could decide that Clark used objectively unreasonable force against Tyson by hitting and kicking him. Similarly, all of Tyson's negligence claims fail, except against Clark and against the institutional defendants for Clark's actions. Finally, the defendants had no duty to preserve evidence, so Tyson's spoliation claim also fails.

Date: February 26, 2026

John J. Tharp, Jr.
United States District Judge

19